IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERMAINE JOSEPH HICKS, a/k/a JERMAINE WEEKS | : : : | CIVIL ACTION |
| v. | : : | NO. 09-4255 |
| DAVID DIGUGLIELMO, ET AL. | : | |

# MEMORANDUM

**SURRICK, J.**                                                                                   **AUGUST 29, 2013**

Presently before the Court is Petitioner Jermaine Hicks's *pro se*[1] Petition for Writ of Habeas Corpus (ECF No. 1) and Objections (ECF Nos. 17, 18) to the Report and Recommendations of Magistrate Judge Wells (ECF No. 37). For the following reasons, Hicks's objections will be overruled and his Petition will be denied.

## I.  BACKGROUND

### A.  Factual History[2]

On November 27, 2001, at approximately 5:00 a.m., Wa Lee left her home for work at Dunkin' Donuts, which was located on the corner of Broad and Snyder Streets in Philadelphia, Pennsylvania. As Lee walked along 15th Street, Petitioner grabbed her and dragged her into an alleyway behind St. Agnes Hospital. Petitioner was armed with a handgun. He held the gun to the victim's mouth, beat her with it, and threatened to kill her if she did not cooperate with him. He then raped her. Several witnesses heard Lee's screams and called 911 to report that a woman

---

[1] We subject *pro se* pleadings to a liberal review. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

[2] The factual history of this case derives from the Post Conviction Relief Act ("PCRA") Court's statement of the facts, which cites to trial testimony. (*See* Comm.'s Resp. Ex. G, ECF No. 20.)

was being attacked.  The police responded within minutes of the witnesses' calls.  Upon their arrival, the officers saw Petitioner on top of the victim, with his pants down around his knees, in the process of raping her.  An officer ordered Petitioner to get off the victim and to place his hands in plain view.  Petitioner failed to comply with the officer's instruction and attempted to retrieve a gun from his jacket.  Once Petitioner reached for his gun, the officer fired and struck Petitioner.  Both the victim and Petitioner were taken to Thomas Jefferson Hospital where they were treated for their injuries.  The officers recovered Petitioner's gun, pants, and underwear, which were stained with the victim's blood.

The events of that early morning were recorded by a surveillance camera.  Due to the nature of the recording equipment at St. Agnes Hospital, a special machine was needed to enhance the images for viewing.  Despite significant efforts by the police to obtain the necessary equipment, the machine was not available for use at the time of Petitioner's trial.  Petitioner's counsel did not request a continuance and did not mention the video when he sought additional discovery during trial.  The original non-enhanced videotape was shown at trial.  In the enhanced videotape, subsequently obtained by the assigned detective and shown at a hearing on the motion for extraordinary relief, a white van is seen backing into the loading dock where the crime occurred.  The video also shows one person dragging another person into the alley and the responding officers arriving at the crime scene.  No further clarifying information was seen on the enhanced videotape.

### B. Procedural History

On November 8, 2002, following a jury trial presided over by Judge Sandy L.V. Byrd of The Court of Common Pleas in Philadelphia County, Petitioner was convicted of rape, aggravated

assault, possession of an instrument of crime, and terroristic threats. Specifically, Petitioner was convicted of dragging the victim into an alleyway at St. Agnes Hospital and then assaulting and raping her. On February 27, 2003, following the denial of Petitioner's motion for extraordinary relief, Petitioner was sentenced to an aggregate term of twelve and a half to twenty-five years imprisonment.

Petitioner filed a direct appeal in the Superior Court of Pennsylvania. On January 31, 2005, the Superior Court affirmed Petitioner's judgment of sentence. On December 28, 2005, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. Subsequently, on August 14, 2006, Petitioner filed a *pro se* petition for relief under 42 Pa. C.S.A. §§ 9541, *et seq.*, the PCRA. (*Pro Se* Pet., ECF No. 1.) Counsel was appointed and filed an amended petition on March 23, 2007. The PCRA Court dismissed the petition on January 31, 2008. The Superior Court affirmed the PCRA Court's dismissal of the petition. On September 10, 2009, Petitioner filed the instant Petition seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner asserts the following claims: (1) the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding the surveillance tape that contained extrinsic after-discovered evidence; (2) a claim of after-discovered evidence based on the surveillance tape; (3) trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to contradict inaccurate medical evidence; (4) trial counsel was ineffective under *Strickland* for failing to procure the necessary equipment to present the surveillance video at trial; and (5) trial counsel was ineffective under *Strickland* for failing to develop the record regarding the presence of Officer Valerie Brown's gun at the scene of the crime. (Pet.'s Mem. 1, ECF No. 1.)

In accordance with 28 U.S.C. § 636(b)(1)(B), the matter was referred to Magistrate Judge

3

Caracappa for a report and recommendation. "District judges have wide discretion on how they choose to treat reports and recommendations from magistrate judges." *Knox v. Barnhart*, No. 05-6613, 2007 WL 674591, at *2 (E.D. Pa. Feb. 28, 2007) (citing *United States v. Raddatz*, 447 U.S. 667, 680 (1980)). Under Section 636(b)(1)(C), "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). We review *de novo* those portions of the Magistrate Judge's Report and Recommendation ("R&R") to which specific objections have been made. *Id.*; Fed. R. Civ. P. 72(b); *see also Thomas v. Arn*, 474 U.S. 140, 141-42 (1985) ("[A] United States district judge may refer . . . petitions for writ of habeas corpus [ ] to a magistrate, who shall conduct appropriate proceedings and recommend dispositions . . . . [A]ny party that disagrees with the magistrate's recommendations may serve and file written objections to the magistrate's report, and thus obtain *de novo* review by the district judge.") (internal quotation marks omitted). Here, the R&R recommended that all of Petitioner's habeas claims be dismissed or denied without an evidentiary hearing. (R&R 2-3, ECF No. 37.) Petitioner has filed Objections to the Magistrate Judge's R&R. (Objections, ECF No. 41.)

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A federal district court reviewing a Section 2254 petition "must determine whether the state court's adjudication of the claims raised was either (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of

the facts in light of the evidence presented." *Washington v. Beard*, 867 F. Supp. 2d 701, 705 (E.D. Pa. 2012). Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), reviewing federal courts are to afford deference to any claim that is adjudicated on the merits in state court. *See* 28 U.S.C. § 2254(d); *Johnson v. Folino*, 735 F. Supp. 2d 225, 232 (E.D. Pa. 2010). In determining whether a state court's application of federal law was "unreasonable," the reviewing federal court applies an objective standard, such that the relevant application "may be incorrect but still not unreasonable." *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000)). The test applied on federal habeas review is whether the state court decision "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Matteo v. Superintentendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999) (*en banc*). In such an inquiry, the petitioner bears the burden to establish that precedent "requires [a] contrary outcome." *Id.* at 888. Section 2254 instructs that courts are to apply a presumption of correctness to factual findings of a state court, which can only be overcome by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Duncan*, 256 F.3d at 196. The presumption of correctness applies equally to state trial and appellate courts, *Johnson*, 735 F. Supp. 2d at 233, and implicit factual findings of state courts, *Campbell v. Vaughn*, 209 F.3d 280, 285-86 (3d Cir. 2000).

## III. DISCUSSION

In the R&R, the Magistrate Judge recommended that all of Petitioner's claims be dismissed or denied. (R&R 2-3.) Specifically, in the R&R, the Magistrate Judge recommended that Petitioner's habeas claim with respect to the *Brady* violation ("Claim One") be dismissed, finding that the Superior Court's rejection of Petitioner's claim was not contrary to, or an

5

unreasonable application of, clearly established federal law. (*Id.* at 10.) The Magistrate Judge also found that Petitioner's second claim of after-discovered evidence ("Claim Two") was procedurally defaulted because it was not presented to the state courts as a federal constitutional claim and thus, cannot be considered on the merits. (*Id.* at 4-5.) With regard to Petitioner's third, fourth, and fifth claims under *Strickland*, the Magistrate Judge found that although the claims were exhausted at the state level, they lacked merit. (*Id.* at 11-13.) Petitioner objects to all of the Magistrate Judge's findings, arguing that all of his claims have merit and that Claim Two was not procedurally defaulted.[3]

### A.   *Brady* Claim (Claim One)

#### 1.   *Brady*

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different . . . ." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006) (internal quotation marks omitted). *Brady* evidence must be turned over "in time for its effective use at trial." *United States v. Higgs*,

---

[3] In Petitioner's Objections, he contends that the Magistrate Judge never should have considered the Commonwealth's Response to his Petition because it was filed three days after the Commonwealth's extended time expired. (Objections 9-10.) On February 24, 2010, the Court approved Respondents' request for additional time to file a response and ordered that Respondents file their response on February 25, 2010. (ECF No. 21.) On February 26, 2010, Respondents filed an additional motion for an extension of time to file a response. (ECF No. 19.) Respondents' Response was filed that same day. Under the circumstances, it was not inappropriate for the Magistrate Judge to consider a response that was filed one day after the Court-imposed deadline.

713 F.2d 39, 44 (3d Cir. 1983). In *United States v. Agurs*, 427 U.S. 97, 110 (1976), the Supreme Court modified the *Brady* rule to require that the prosecution disclose exculpatory evidence to the defendant when there has not been a request for that information.

    2.  *Videotape*

Petitioner claims that the Commonwealth had surveillance video of the crime scene proving that he was not the man who attacked the victim. In support of his argument, Petitioner contends that the video shows that the attacker was wearing a grey hoodie and a waist-length jacket, that the police never recovered a grey hoodie from Petitioner, and that Petitioner had a three-quarter length jacket on. Petitioner argues that the gravamen of his *Brady* claim is that the Commonwealth simply withheld the exculpatory tape from the defense during trial.

As the Magistrate Judge observed in the R&R, the PCRA Court and the Superior Court denied Petitioner's Brady claim as meritless. The Superior Court focused on the Commonwealth's good-faith attempt to procure the necessary equipment to view the tape and explained that the Philadelphia Police Department was able to obtain the equipment only after Petitioner's trial. St. Agnes Hospital, the source of the surveillance video, changed equipment soon after the rape occurred and no longer possessed the machine that would play the videotape. Moreover, the PCRA Court and Superior Court noted that the surveillance tape was simply not exculpatory. The Superior Court found that the video revealed a man in a dark jacket, light pants, and a grey hoodie. Petitioner acknowledges that he was wearing a dark jacket and light pants. Witnesses who observed the rape testified that Petitioner was dressed in a black jacket, light pants, and a gray hoodie when he dragged the victim into the alley and when he was arrested. Petitioner was taken to the hospital following the rape because he had been shot by police officers

when he attempted to pull a gun out of his pocket when the police arrived on the scene. At the hospital, the police were forced to cut off Petitioner's clothing. When the hospital turned over the clothing to the police, there was no grey hoodie included. The tape also reflected the arrival of a white delivery truck in the area of the alley contemporaneous to the arrival of the police. Petitioner speculatively contends that the headlights of the delivery truck scared off the real attacker and that the victim was mistaken when she believed the police officers' flashlights are what she saw when Petitioner stopped raping her. Petitioner also contends that the tape reveals the real attacker leaving the scene of the crime and Petitioner arriving to rescue the victim.

The jury heard testimony about the "missing hoodie" and nevertheless found Petitioner guilty. The PCRA Court and Superior Court concluded that the surveillance video did not support Petitioner's version of events. The Superior Court explained that the enhanced video did not show anyone fleeing the scene nor did it show Petitioner entering the alley to assist anyone. Moreover, the victim testified that it was Petitioner who held a gun to her mouth, beat her with the gun, and then raped her. When the police arrived on the scene, they saw Petitioner on top of the victim, raping her. Both the trial court and Superior Court found Petitioner's argument that the enhanced videotape constituted *Brady* evidence unconvincing. We do also. The Magistrate Judge was correct in concluding that the Superior Court's rejection of Petitioner's *Brady* claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.

**B.  After-Discovered Evidence (Claim Two)**

    *1.  Procedural Default*

The procedural default rule precludes federal courts from reviewing a state prisoner's

8

habeas claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Consequently, we have "no power to review a state law determination that is sufficient to support the judgment." *Id*. If a petitioner presented a claim, but the state court refused to address its merits for some procedural reason, the claim is procedurally defaulted. *Id*. at 750. "[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus 'out of respect for finality, comity, and the orderly administration of justice.'" *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004) (quoting *Dretke v. Haley*, 541 U.S. 386, 388 (2004)).

Although the doctrine of procedural default may bar a petitioner from pursuing federal constitutional claims in state court, two exceptions may entitle a petitioner to federal habeas review. *Bowen v. Blaine*, 243 F. Supp. 2d 296, 302 (E.D. Pa. 2003). The first such exception takes effect when a petitioner establishes "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. Second, a petitioner may demonstrate "that failure to consider the [claim eligible for procedural default] will result in a fundamental miscarriage of justice." *Id.*

          2.     *After-Discovered Surveillance Tape*

Petitioner contends that his after-discovered evidence claim was not procedurally defaulted because he encountered the "external impediment" of the Commonwealth withholding an exculpatory surveillance video. (Objections 12.) The Magistrate Judge found that Petitioner cast his after-discovered evidence argument as a violation of state law rather than as a violation of federal constitutional law. (R&R 4.) Since Petitioner cited only state court cases, neither the state

9

courts nor the Magistrate Judge thought it appropriate to view Petitioner's after-discovered evidence claim as a federal constitutional claim. Petitioner now claims that his after-discovered evidence claim is intertwined with his *Brady* claim and should be considered as a federal constitutional claim. We are satisfied that the Magistrate Judge was correct that Petitioner's Second Claim is procedurally defaulted.

Petitioner also asserts that failure to review the after-discovered evidence would result in a "fundamental miscarriage of justice," because the surveillance tape is exculpatory. (Objections 12.) As discussed above, even if we were to consider Petitioner's Second Claim as intertwined with his first, that would not change the reality that the surveillance video is simply not exculpatory. Despite the fact that the attacker was wearing a grey hoodie in the video and that a grey hoodie was not recovered after Petitioner was treated at the hospital, the video does not support Petitioner's version of events. We cannot say that the state courts' decisions were contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented.

    **C.**     ***Strickland* Claims (Claims Three, Four, and Five)**

        *1.*     *Strickland*

In his Third, Fourth, and Fifth claims, Petitioner argues that his trial counsel was ineffective and that his Sixth Amendment right to counsel was violated. Claims of ineffective assistance of counsel in violation of the Sixth Amendment are governed by the Supreme Court's decision in *Strickland*, 466 U.S. at 687. In *Strickland*, the Court held that a defendant makes a showing of ineffective assistance of counsel when he establishes that: (1) his attorney's performance was deficient; and (2) the deficient performance prejudiced his defense. *Id.*; *Shelton*

*v. Carroll*, 464 F.3d 423, 438 (3d Cir. 2006). To establish deficient representation, a defendant must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688). To establish prejudice, a defendant must show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *Rainey v. Varner*, 603 F.3d 189, 197-98 (3d Cir. 2010).

Under *Strickland*, counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of "overcom[ing] the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). While a defendant has the right to effective assistance of counsel, courts have explained that the Constitution does not guarantee the right to a perfect trial. *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) ("[T]he court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel."). "Judicial scrutiny of counsel's performance must be highly deferential" as "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689.

In *Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005), the Third Circuit addressed how

district courts should proceed in assessing whether an attorney's performance was constitutionally deficient under the first *Strickland* prong. In that case, the Court held, *inter alia*, that:

> [s]imilar to instances in which a court disposes of an ineffective assistance of counsel claim by analyzing the prejudice prong without considering whether counsel's performance was deficient, it is appropriate for a court to dispose of a case in which conduct is objectively reasonable without considering counsel's strategy. . . . Put differently, no hearings as to counsel's strategy are necessary in cases in which the conduct challenged is objectively reasonable, as courts can simply reject the claims on reasonableness grounds.

*Id*. at 501 n.10.

### 2. Claim Three

Petitioner's third habeas claim deals with trial counsel's failure to affirmatively put on evidence with regard to his medical records. Specifically, Petitioner argues that he was shot three times in the back, which contradicts the Commonwealth's claim that he was shot in the chest. In his Objections, Petitioner argues that the Superior Court acknowledged a discrepancy regarding where he was shot and how many times he was shot, and disputes the Magistrate Judge's finding that the Superior Court found this claim to be meritless. (Objections 19-20.)

Petitioner's objection to the Magistrate Judge's R&R on this point is completely devoid of merit for several reasons. First and most importantly, Petitioner testified that he was shot in the back. (*Id.* at 21.) The jury was able to hear from Petitioner with regard to the location of the bullet wounds and to see the wounds when he lifted his shirt during his testimony at trial. (*Id.*) They were then able to weigh his credibility as compared to that of the officers. In addition, the surgeon who treated Petitioner submitted a letter that was offered into evidence at trial in which he acknowledged that he could not testify as to how the bullets entered and exited Petitioner's body. (*Id.* at 20.) Petitioner simply speculates that forensic pathologist Dr. Cyril Wecht would confirm his version of events. Finally, Petitioner does not direct the Court's attention to the

12

prejudice that he suffered as a result of trial counsel's failure to pursue this fact issue further. Petitioner merely asserts that this issue goes to credibility. (*Id.* at 21.) Even if this issue was in dispute, the failure of counsel to argue more vigorously does not render trial counsel's representation ineffective pursuant to *Strickland*. The fact remains that the officers testified that they discovered Petitioner on top of the victim in the act of raping her. Upon witnessing Petitioner reach for a gun in his pants, which were down and stained in the victim's blood, the officers shot Petitioner. Whether the bullets entered Petitioner's body from the back and exited through the chest or entered the chest and exited through the back is of little consequence. Accordingly, there was no *Strickland* issue with regard to Claim Three.

    3.  *Claim Four*

Petitioner's fourth habeas claim is that trial counsel was ineffective for failing to procure the necessary technological equipment to play the surveillance tape at trial. Petitioner argues that the Superior Court incorrectly placed the burden on him personally to procure equipment for the tape and that the Magistrate Judge's R&R misunderstands the facts. (Objections 21-22.) As discussed above, the surveillance video was not exculpatory. Since the "failure to raise non-meritorious issues does not constitute ineffective assistance of counsel," *United States v. Clark*, No. 01-428, 2009 WL 3837404, at *5 (E.D. Pa. Nov. 16, 2009), Defendant's *Strickland* claim must fail.

    4.  *Claim Five*

Finally, Petitioner's fifth claim was that trial counsel was ineffective for failing to pursue a line of investigation or inquiry regarding the presence of Officer Brown's gun at the crime scene. After Petitioner was discovered by the police in the act of raping the victim, the police saw

Petitioner reaching for a gun in his pants pocket. Petitioner claims he was reaching for his cell phone to contact the police. After Petitioner was shot, a gun was recovered by the police. Once Petitioner was arrested, the police ran the serial number of the gun and found that it was a private weapon registered to a police officer, Officer Valerie Brown, who was not involved in Petitioner's arrest. Petitioner contends that the arresting officers planted the gun on him at the crime scene to justify shooting him. The Superior Court reviewed this claim and found that trial counsel was not ineffective, because Petitioner provided no evidence to establish that trial counsel's alleged failure to investigate the origin of the gun was prejudicial to the outcome of the trial. At trial, Petitioner's counsel questioned Officer Brown at length, and during closing statement, argued that Officer Brown had provided her gun to the other police officers as a "throw-down gun" to be planted at crime scenes. Obviously, the jury was not persuaded.

The record here does not reflect that the Superior Court's rejection of Petitioner's claim was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented. The PCRA Court rejected Petitioner's Fifth Claim based on the overwhelming evidence against him, which supported his convictions for rape, aggravated assault, possession of an instrument of crime, and terroristic threats. Petitioner has failed to demonstrate how an investigation into the source of the gun would have changed the outcome of the trial. Accordingly, Claim Five must be dismissed.

   D.   **Certificate of Appealability**

A Certificate of Appealability ("COA") will not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA when a petition has been denied on the merits, a habeas petitioner must show that

"reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court dismisses the petition on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. at 484 (emphasis added).

Petitioner cannot meet either of these standards. Petitioner has not made a substantial showing of the denial of a constitutional right. Furthermore, reasonable jurists could not disagree about our procedural rulings; Petitioner's Second Claim is procedurally barred as a result of his failure to assert a violation of his federal constitutional rights at the state court level. In addition, all of Petitioner's claims lack merit. Since reasonable jurists could not disagree with these assessments, we deny Petitioner's request for a COA.

## IV. CONCLUSION

For the foregoing reasons:

1. Petitioner's Objections to the Report and Recommendation are overruled.

2. The Report and Recommendation is approved and adopted.

3. The Petition For Writ Of Habeas Corpus is denied.

4. A certificate of appealability will not issue.

5. The Clerk of Court shall mark this case closed.

**IT IS SO ORDERED.**

               **BY THE COURT:**


               ***/s/R. Barclay Surrick***
               **U.S. District Judge**